## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **SUNEDISON, INC.,** *ET AL.***,** | ) | **Case No. # 16-01769 (PKC)** |
| **In re:  Chapter 11** | ) | **Case No. # 16-109902 (SMB)** |
| | ) | 1:16-md-2742-PKC |
| | ) | **17-CV-5541(JMF)** |
| | ) | |
| **Stephen A. Miller pro se** | ) | **Request for oral argument** |
| **Shareholder   Plaintiff / Appellant** | ) | |
| | ) | # 17CV 5873 |
| **V** | ) | |
| | ) | |
| **Attorney Salvatore Graziano** | ) | |
| **Attorney Max Berger** | ) | |
| **Bernstein Litowitz Berger & Grossman LLP** | ) | |
| **Attorney Dennis Herman** | ) | |
| **Attorney Samuel Rudman** | ) | |
| **Robbins Geller Rudman & Dowd LLP** | ) | |
| **Attorney John Drucker** | ) | |
| **Defendants / Apelles** _____ | ) | |

### MALPRACTICE COMPLAINT

1.      Title 16, Chapter 31 of the U.S. Code contains sections that deal with the various forms of embezzlement and their penalties. The supply of $10,700,000,000 from underwriters was only used for one acquisition to buy First Wind for $862,000,000. The court must fire attorneys who failed to appear and sabotaged the shareholders. Failure to understand that simple glaring evidence while claiming the funds and the debt was being used to accelerate the business of SunEdison is the epitome of ignorance. The bankruptcy was a ruse to cover up the scheme to embezzle the stockholders' money the minute it arrived from the investment bankers. Being forced to use ignorant lawyers must be rectified. The plaintiff has had first hand experience with each defendant named.

2.      **Privity** is the legal term for a close, mutual, or successive relationship to the same right of property or the power to enforce a promise or warranty. It is an important concept in contract law. **Privity**:is a relationship between persons who successively have a legal interest in the same right or property. If the class action attorneys who spent a lot of work to write the complaint for the stockholders had reasonable judgement they would buy millions of shares at $.014 per share to earn an enormous capital gain when they had a news conference with the WSJ, Reuters, Bloomberg, and the New York Times to expose the embezzlement of their own stock. The price would skyrocket to more than $50.00 (see damages).

3.      List the projects with PPA (Power Production Agreement) amounts set before the April 2016 bankruptcy. Why did the court authorize the $300,000,000 Debtor in Possession loan when each project had been financed? The PPA funds had been committed for each project or no agreement could be reached for all parties. The missing PPA funds were embezzled too.

4.      When each project was sold those funds belonged to the stockholders. No bankruptcy was necessary to pay lenders. The court was ignoring the missing funds that were stolen. No legal representation for the stockholders appeared for the entire bankruptcy proceeding with the authority by the court. To avoid an appeal to protect the stockholders' interest the court must rule its own proceeding was negligent. The certified class action attorneys on record designated to represent the class must be fired and new attorneys must be certified by the court reversing the entire bankruptcy procedure to recover the missing funds from the investment bankers who deceived their customers.

5.      Who authorized investment bankers to sell these 22 securities? :

| | |
|---|---|
| $565mm | $410mm |
| $492mm | $336mm |
| $438mm | $150mm |
| $435mm | $366mm |
| $334mm | $2,056mm |
| $8mm | $80 |
| $32mm | $1,355mm |
| $284mm | $190mm |

What specific dates were these issues sold?

| | | |
|---|---|---|
| $600 mm | 2018 | Conv Senior Notes 2% |
| $600 mm | 2020 | Conv Senior Notes  .25% |
| $600 mm | 2021 | Conv Senior Notes 2.75% |
| $460 mm | 2022 | Conv Senior Notes 2.315% |
| $450 mm | 2023 | Conv Senior Notes 2.625% |
| $450 mm | 2025 | Conv Senior Notes 3.375% |

In the year leading up to the beginning of the Class Period in August 2014, SunEdison's debt climbed from $2.6 billion to $5.4 billion – an increase of over 100%. By the end of the second quarter of 2015, SunEdison's debt had escalated to $10.7 billion, an increase of another 100%..

6.     No transactions to accelerate growth were ever recorded during the class period beginning August 2014. The court's consistent failure to rule on the issue of why investment bankers repeatedly sold the aforementioned securities without any attempt to increase any business. The silent response by the court must be construed to violate the judicial code of negligence. Prevent criminal allegations that must be a part of the appeal.by reversing the entire bankruptcy negligence..

7.     No deposits of the funds in SunEdison accounts were recorded at the time these investment bankers created the following debt obligations that caused the bankruptcy: The owners of debt obligations (secured or unsecured) must hold these investment bankers responsible, not the shareholders of SunEdison. The

court can't be stupid and ignorant. The court's silence during the embezzlement issue is evidence that the court is a conspirator with these investment bankers Deutcsche Bank Securities Inc., Goldman Sachs & Co., JP Morgan Securities LLC, Macquarie Capital (USA), Inc. MCS Capital Markets LLC, Merrill Lynch, Pierce, Fenner, and Smith., Inc. and Morgan Stanley & Co. LLC..

7.    The employees interviewed for the class action complaint verified an absence of cash at all times.

8..    "Page 38& 39 (of the complaint) "The Head of Global Field Operations recalled that SunEdison's internal controls were a 'web of chaos and confusion' and "the biggest mess ever" and that SunEdison's system of financial reporting was so 'mind boggling' poor that thought it had to have been "intentional" because it inevitably led to "massive underpayment" to suneq's creditors.""

7.    Why didn't the court order a deposition of CEO Ahmad Chatila to learn why he ordered the investment bankers to sell the aforementioned securities? Without any transactions using these funds to accelerate growth the only possible use of this money was to embezzle it.

No evidence exists to corroborate the claim by Attorney Graziano the bankruptcy resulted from a "rapid ascension" to accelerate the business. This has been a myth accepted by the court throughout the entire bankruptcy case.

8.    Vivint Solar was a worthless company. The appellant gave the court a copy of the Vivint Solar income statement showing huge losses. The court is required to make a factual finding regarding the desire by the SunEdison executive team to invest money requiring more debt.

4

Page 53 (of the complaint) Goldman Sachs was willing to loan the $500,000,000 only on a secured basis to acquire Vivint Solar for $1,900,000,000.

9. Goldman Sachs knew from published statements bankruptcy was weeks away. Their $500,000,000 would be embezzled back. Mr. Graziano never added Goldman Sachs to the list of defendants in return for his payoff. Attorney Dennis J. Herman refuses to represent his own clients while protecting Salvatore Graziano. Common stock is common to all stockholders. Critical legal malpractice must be before the court. This resembles the molester case by Catholic priests and cardinals, and happens very often in America..

10. A grievance against all defendants of this motion was mailed to Julie Allsman Counsel Grievance Committee dated April 25, 2017 and attached to this motion. The facts are vivid. The plaintiffs' lawyers have purposely sabotaged their clients. The grievance has been denied. On June 27, 2017 the Office of the Inspector General claimed it thoroughly reviewed the May 28, 2017 request to investigate the lazy, incompetent FBI response to seven repeated complaints.

11. The fourteen projects acquired were each "dropped down" to the subsidiaries to make activity appear. The subsidiaries could have made the acquisitions directly and therefore eliminate the bogus appearance of activity. The "rapid ascent" by the subsidiaries from the dropped down projects didn't bankrupt the subsidiaries (called yieldcos). The transfer of the dropped down projects increased the amount to embezzle. What amount of money and what

dates were the 14 projects acquired and then transferred by Mr. Chatila? Ask those questions for the deposition. This is standard discovery for the lawsuit.

12..    FUNDAMENTAL FAIRNESS MUST DECIDE THE EMBEZZLEMENT

The bankruptcy proceeding can't be fundamentally fair to suneq stockholders until the court rules on the evidence that the creditors funds disappeared. No transactions took place using the money from the lenders stolen by the investment bankers and CEO Chatila.

The court is sophisticated but asks absurd questions that avoid knowing the money from the lenders was never added to the stockholders assets. The money was stolen from the stockholders not stolen from the lenders. The lenders must file suit against the investment bankers to recover their losses.

The loans to suneq were embezzled from the stockholders. It started as a deliberate fraud. The money was never spent, it was stolen. The court refuses to rule on this evidence. The court never demands any legal representation for the stockholders. The class action attorneys on record never appear in the bankruptcy court.

There is no fundamental fairness by the court. In performing Section 1129(a)(3) "totality of circumstances" analysis, courts consider both the debtor's pre-petition and post-petition conduct. Leslie Fay, 207 B.R. at 781; In re Toy and Sports Warehouse Inc.., 37B.R. 141,149 (Bankr. S.D.N.Y.1988; In re Smith, 848 F.2d 813, 821 (7th Cir. 198) (reversing district court's decision in a Chapter 13 case for failing to consider pre-petition conduct)

Thus a court must examine not only the contents of the plan before it, but also the entire process by which the plan was concocted. *See* In re Bush Indus. Inc. 315 B.R. 292, 305 (Bankr. W.D.N/Y 2004) (Section 1129(a)(3) "imposes a strict mandate for proper process and methodology")

13    Judicial Misconduct Complaint will soon be filed to the Chief Judge for the SDNY.

## DAMAGES

14.    $25,000,000 would be the value for the plaintiff's shares when legitimate lawyers who understand their objective is to prevent a new common stock while the present common stock is destroyed by the illegal bankruptcy proceedings. The stolen money by the investment bankers must be recovered and the bogus debt they underwrote must be cancelled. SunEdison would have in excess of $15,000,000,000 cash and no debt. The gain for the lawyers would far exceed any fee they charged. This is the proper benefit of capitalism..

Respectfully submitted,

*Stephen A. Miller*

Stephen A. Miller pro se and class action plaintiff
83 Waldorf Avenue
Bridgeport, CT 06605
203-870-1408
July 24, 2017

## CERTIFICATION

I Stephen A. Miller, hereby certifies delivery on 7/31/17 by email to
Attorney Salvatore Graziano  Salvatore@blbglaw.com
Max Berger Partner  mwb@mlbglaw.com
Dennis J. Herman dherman@rgrdlaw.com
Samuel H. Rudman srudman@rgrdlaw.com
John Drucker          jdrucker@coleschotz.com
The Honorable Stuart Bernstein  Bernstein.chambers@nysb.uscourts.gov
Alex Hood                    ahood@pomlaw.com
Ian Berg                      iberg@aftlaw.com
Susan Taylor                susant@rgrdlaw.com
Thomas McKenna          tjmckenna@gme-law
Andrew Rossman          andrewrossman@quinnemanuel.com
Jordan Goldstein          jordangoldstein@quinnemanuel.com
Kimberly Carson          kimberlycarson@quinnemanuel.com
Jesse Bernstein          jessebernstein@quinnemanuel.com
Jon Pickhardt          jonpickhardt@quinnemanuel.com
David M. Grable          davegrable@quinnemanel.com
Edward Fox                emfox@seyforthshaw.com